J-A34030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JACK ALAN HOKE, | : | |
| | : | |
| Appellant | : | No. 307 MDA 2014 |

Appeal from the Judgment of Sentence Entered January 23, 2014,
In the Court of Common Pleas of Cumberland County,
Criminal Division, at No. CP-21-CR-0003069-2011.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:               **FILED FEBRUARY 10, 2015**

Appellant, Jack Alan Hoke, appeals from the judgment of sentence entered after he was expelled from the state intermediate punishment program (a/k/a "SIP"), which had been imposed on his conviction of criminal attempt to obtain drugs by fraud in relation to Appellant altering a valid prescription for thirty-six tablets of oxycodone to 360 tablets of oxycodone.[1] We affirm.

---

[1]  "The legislature enacted [the state intermediate punishment program] in November 2004.  [It] is a two-year program designed to benefit persons with drug and alcohol problems.  61 Pa.C.S. §§ 4102-4109." **Commonwealth v. Kuykendall**, 2 A.3d 559, 560 (Pa. Super. 2010).  The state intermediate punishment program was created to "punish persons who commit crimes, but also provides treatment that offers the opportunity for those persons to address their drug or alcohol addiction or abuse and thereby reduce the incidents of recidivism and enhance public safety."  61 Pa.C.S. § 4102.  In addition, the program was "designed to address the

The trial court summarized the procedural history of this case as follows:

On October 7, 2011, [Appellant] was charged with Obtaining Drugs by Fraud (Oxycodone), 35 P.S. § 780-113(a)(12), an ungraded felony. On January 17, 2012, an Information was filed by the District Attorney charging [Appellant] with the above charge as well as with Criminal Attempt to Obtaining Drugs by Fraud (Oxycodone), 18 Pa.C.S.A. § 901 and 35 P.S. § 780-113(a)(12), also an ungraded felony. On the Information, both Count 1 and Count 2 were listed as having a maximum term of imprisonment of 5 years. On October 4, 2012, [Appellant] pled guilty to Count 2, Criminal Attempt to Obtaining Drugs by Fraud. At [Appellant's] guilty plea colloquy, the Commonwealth advised this Court and [Appellant], in accord with the Information, that the maximum possible term of imprisonment for Count 2 was five years. [Appellant] then entered his plea in anticipation of entering the State Intermediate Punishment Program (SIP) if accepted, which would result in a flat 24 month sentence. [Appellant] was ordered to appear at the Cumberland County Prison on December 26, 2012, at 9:00 a.m., and the Sheriff was directed to transport [Appellant] to SCI Camp Hill for screening for entry into the SIP at that time.

On December 26, 2012, [Appellant] filed a motion to defer commitment, which was granted, and [Appellant] was ordered to appear before this Court on January 8, 2013. On January 8,

---

individually assessed drug and alcohol abuse and addiction needs of a participant and shall address other issues essential to the participant's successful reintegration into the community, including, but not limited to, educational and employment issues." 61 Pa.C.S. § 4105(a). In addition, we have explained that "expulsion and revocation [from the program] are separate and distinct by statute. The [Department of Corrections] may expel a defendant from the program, but upon expulsion, must promptly notify the court so that it can conduct a revocation hearing. If the court revokes the defendant, it then must re-sentence him." *Kuykendall*, 2 A.3d at 562. Here, Appellant challenges only the sentence imposed after the revocation of his state intermediate punishment sentence, not the actual revocation of the state intermediate punishment sentence.

2013, pursuant to an order of this Court, [Appellant] was taken by the Sheriff to SCI Camp Hill for screening for entry into SIP. After [Appellant] had completed the screening process, and upon receipt by this Court of a report from SCI Camp Hill that [Appellant] would benefit from SIP, [Appellant] was sentenced on June 10, 2013, to a period of state intermediate punishment of 24 months.

By letter dated November 4, 2013, this Court was informed that [Appellant] had been expelled from SIP. That letter stated that [Appellant] had been "expelled from the Program as a result of his lack of meaningful participation, demonstrated by ongoing behavioral problems and program violations." We therefore scheduled a hearing for December 6, 2013. At [Appellant's] request, that hearing was continued. In requesting a continuance, defense counsel stated that he was "hopeful that we can . . . resolve something as to what the sentence will be. . . ." In response, we informed defense counsel that "when someone gets kicked out of something and there is a revocation, the sentence is entirely up to this Court." Defense counsel responded, "Yes ma'am."

On December 9, 2013, this Court received a pre-sentence investigation memo which listed the sentencing guidelines for Count 2 as follows: a mitigated range of 36 months, a standard range of between 48 and 60 months, and an aggravated range of also between 48 and 60 months. That memo also advised this Court that [Appellant] had been "expelled from the Program [SIP] as a result of his lack of meaningful participation, demonstrated by ongoing behavioral problems and program violations." On January 23, 2014, [Appellant] was brought before us via teleconference to be resentenced. We informed [Appellant] that the standard range pursuant to sentencing guidelines was between 48 and 60 months. Defense counsel acknowledged this range as correct. We then sentenced [Appellant] at Count 2, Criminal Attempt to Obtain Drugs by Fraud, an ungraded felony, to undergo imprisonment in a state correctional facility for not less than 36 months nor more than 72 months, a mitigated range sentence. As our sentencing order states, we sentenced [Appellant] in the mitigated range out of "consideration that [Appellant] has indicated that he has been clean since he has been in prison, and in consideration that his

addictions stem out of multiple medical surgeries that he has had for injuries."

Trial Court Opinion, 5/28/14, at 2-4 (footnotes omitted).

Appellant then filed this timely appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following single issue for our review:

Whether the Commonwealth breached a material term of the parties['] plea agreement, by permitting Appellant to be re-sentenced in excess of the maximum agreed upon term of incarceration?

Appellant's Brief at 4 (full capitalization omitted).

Appellant argues that his plea agreement had been breached when, at the time of resentencing, the trial court imposed a maximum sentence of six years of incarceration. Appellant asserts that he entered a guilty plea to one criminal charge in exchange for the Commonwealth's promise to withdraw one charge and to set a maximum punishment of five years of incarceration for the remaining charge. Appellant claims that, after he was expelled from the state intermediate punishment program, he was resentenced to a term of incarceration in excess of the maximum punishment of five years, as agreed upon by the parties and approved by the trial court. Appellant contends that fundamental fairness requires that the bargained-for sentence be enforced, Appellant's judgment of sentence be reversed, and the case remanded to permit specific enforcement of the Commonwealth's promise to

cap the maximum sentence to be imposed at five years of incarceration. Upon thorough review, we conclude that Appellant is not entitled to specific enforcement of the five-year maximum punishment, as mentioned at the time of his negotiated plea. Appellant's subsequent revocation and expulsion from the state intermediate punishment program abrogated the plea agreement.

"In determining whether a particular plea agreement has been breached, we look to 'what the parties to this plea agreement reasonably understood to be the terms of the agreement.'" *Commonwealth v. Hainesworth*, 82 A.3d 444, 447 (Pa. Super. 2013) (*en banc*) (quoting *Commonwealth v. Fruehan*, 557 A.2d 1093, 1095 (Pa. Super. 1989). Such a determination is made "based on the totality of the surrounding circumstances," and "[a]ny ambiguities in the terms of the plea agreement will be construed against the [Commonwealth]." *Hainesworth*, 82 A.3d at 447 (quoting *Commonwealth v. Kroh*, 654 A.2d 1168, 1172 (Pa. Super. 1995)).

In addressing Appellant's claim, we find our decision in *Commonwealth v. Partee*, 86 A.3d 245 (Pa. Super. 2014), *appeal denied*, 97 A.3d 744 (Pa. 2014), to be instructive and controlling. In *Partee*, the appellant entered a negotiated *nolo contendere* plea to several sexual offenses, including indecent assault of a minor less than thirteen years of

age. *Id*. at 246. The trial court sentenced the appellant to six months of intermediate punishment, followed by four years of probation. *Id*. At the time of the plea, a conviction of indecent assault of a minor less than thirteen years of age carried a ten-year sexual offender registration period. *Id*. at 248-249.

Subsequently, the appellant violated his probation and was resentenced. *Id*. at 246. Following the enactment of SORNA,[2] the appellant received notification that pursuant to the statute, he was required to register as a sexual offender for life, instead of the ten-year period imposed in connection with his plea agreement. *Id*. The appellant filed a "petition for *habeas corpus* and/or seeking enforcement of a plea agreement," attempting to avoid the retroactive application of the SORNA registration requirements. *Id*. The trial court treated the appellant's filing as a PCRA petition and dismissed it, after which the appellant filed an appeal to this Court. *Id*.

Initially, the **Partee** Court held that the trial court improperly treated the appellant's petition to enforce the plea agreement as a PCRA petition. *Id*. at 247. In addressing whether the appellant was entitled to specific enforcement of the ten-year registration period, this Court stated that "[w]hile [the ten-year registration period] was not an explicit term of the negotiated plea, it is apparent that [the a]ppellant's negotiated plea

---

[2] Sex Offender Registration and Notification Act, 42 Pa.C.S. § 9799 *et seq*.

agreement was structured so that he would only be subject to a ten-year rather than a lifetime reporting requirement …." *Id*. at 249. The Court further commented that "[u]nder our reasoning in *Hainesworth*, [the a]ppellant arguably would be entitled to the benefit of that bargain." *Id*. However, the Court held that the appellant was not entitled to specific performance because he had abrogated his plea agreement by violating his probation. *Id*. at 249-50. Specifically, the Court in *Partee* stated the following:

> Appellant cannot seek specific performance of the underlying plea agreement[,] as there is no longer a plea bargain to enforce. [The Commonwealth] cites *Commonwealth v. Parsons*, 2009 PA Super 66, 969 A.2d 1259 (Pa. Super. 2009) [(*en banc*)], for the proposition that "where the original sentence evolved from a plea bargain, and a defendant later violates his parole or probation, the defendant has effectively abrogated the underlying plea bargain." *Id*. at 1270 n.6. "[U]pon revocation [of probation,] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing[.]" 42 Pa.C.S. § 9771[(b)].
>
> As our Supreme Court held in *Commonwealth v. Wallace*, 582 Pa. 234, 870 A.2d 838, 842-43 (Pa. 2005), where probation is violated, the trial court is free to impose any sentence permitted under the Sentencing Code and is not restricted by the bounds of a negotiated plea agreement between a defendant and prosecutor.

*Partee*, 86 A.3d at 249-250. The *Partee* Court concluded that, "having failed to abide by the terms of the plea bargain, [the appellant's plea] agreement is no longer in effect, and hence, [the a]ppellant is not entitled to specific performance." *Id*. at 250. As a result, the Court ruled that the

appellant was required to register as a sexual offender for life under SORNA. *Id*.

We see no difference between the imposition of a sentence of a term of probation, as in *Partee*, and a sentence of participation in the state intermediate punishment program, as in the instant matter. *See Kuykendall*, 2 A.3d at 563 (finding to be analogous sentences of probation and sentences of state intermediate punishment). As we explained in *Kuykendall*, a sentence to participate in the state intermediate punishment program is conditional and "requires offenders to comply with specific statutory requirements in order to provide rehabilitative treatment. Thus, [state intermediate punishment], more so than probation, serves the dual purpose of punishing a defendant and rehabilitating him or her." *Kuykendall*, 2 A.3d at 565.

Similar to the appellant in *Partee*, after the trial court sentenced Appellant pursuant to the guilty plea agreement, Appellant violated the terms of his state intermediate punishment program resulting in his ultimate expulsion and revocation from the program. N.T., 10/4/12, at 2-7; 1/8/13, at 2; 6/10/13, at 2-3. Hence, Appellant effectively abrogated his plea agreement by violating the terms of, and suffering expulsion from, the state intermediate punishment program. Therefore, Appellant is not entitled to the benefits contemplated within the plea agreement. Thus, upon the

revocation of Appellant's sentence to the state intermediate punishment program, the sentencing court had before it the same alternative as available at the time of initial sentencing. *Partee*, 86 A.3d at 249-250. *See also* 42 Pa.C.S. § 9774(c) (stating that "[u]pon revocation of a State intermediate punishment sentence, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing."). Accordingly, Appellant's claim that the terms of his plea agreement were breached lacks merit.

Moreover, we are unpersuaded by Appellant's attempt to avoid the application of *Partee* by alleging that his application for the state intermediate punishment program was not a condition of his plea agreement. Appellant's Brief at 14. Indeed, the record belies such claim. N.T., 10/4/12, at 2-7. Therefore, we are constrained to affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2015